The STATE of Ohio, Appellee,

v.

VITANOVICH, Appellant.

[Cite as *State v. Vitanovich* (1994), 97 Ohio App.3d 494.]

Court of Appeals of Ohio,
Summit County.

No. 16380.

Decided Oct. 5, 1994.

*Lynn Slaby,* Summit County Prosecuting Attorney, and *Philip Bogdanoff,* Assistant Prosecuting Attorney, for appellee.

*Edwin C. Pierce,* for appellant.

DICKINSON, Judge.

Defendant Michael V. Vitanovich has appealed from a judgment of the Summit County Court of Common Pleas by which it ordered forfeiture of a 1991

Chevrolet S–10 Blazer. He has argued that the trial court incorrectly (1) classified the vehicle as contraband, (2) failed to consider a statutory exception to forfeiture for innocent owners, and (3) denied his application that his company be permitted to reclaim parts from the vehicle. This court affirms the trial court's order because the vehicle was properly deemed contraband, defendant did not meet the statutory requirements of the exception to forfeiture for innocent owners, and defendant's company could not reclaim parts on the vehicle because the vehicle identification number had been altered.

I

Defendant is the owner of Exotic Auto Body Inc. ("Exotic Auto"). Exotic Auto operates a garage at which it repairs vehicles for Authentic Motor Cars Unlimited, Inc. ("Authentic Motor"), a car dealership owned by defendant's father. One of the things Exotic Auto does for Authentic Motor is restore salvage vehicles.

A salvage vehicle is one that has been damaged to such an extent that it cannot be economically repaired. A special title designating it as a salvage vehicle is issued pursuant to R.C. 4505.11. If a salvage vehicle is restored, a new title can be obtained for it that designates it "REBUILT SALVAGE." Before such a new title will be issued, however, the vehicle must be inspected by the Ohio Highway Patrol. That inspection "shall include establishing proof of ownership and an inspection of the motor number and vehicle identification number of the motor vehicle and of documentation or receipts for the materials used in restoration by the owner of the motor vehicle being inspected, which documentation or receipts shall be presented at the time of inspection." R.C. 4505.11(E).

On December 11, 1991, Authentic Motor purchased three 1991 Chevrolet S–10 Blazers, all of which were titled as salvage vehicles. Two of them had been damaged in collisions, and the third had been damaged by fire. Exotic Auto restored the two that had been damaged in collisions. In restoring one of the collision vehicles, it used parts that it had purchased. In restoring the other, however, it used a number of parts that it had reclaimed from the burned vehicle. After restoration, the two vehicles were identical in appearance, with light silver grey exteriors and grey interiors.

On February 4, 1992, employees of Exotic Body took the two Blazers to the Ohio Highway Patrol for inspection. The trooper inspecting one of the vehicles concluded that there were more replacement parts on it than identified on a replacement parts list provided by Exotic Body. He also noted that a sticker bearing the vehicle identification number had been removed from the left door. Finally, he concluded that a vehicle identification number sticker inside the glove compartment had been tampered with. He reached that conclusion because it appeared as though the sticker had been lifted at one spot and had bubbled at

others. In addition, there was a glue spot adjacent to the sticker that made it appear that a previous sticker had been removed. Based upon his observations, he seized the vehicle. The second Blazer passed inspection without incident.

Upon learning that one of the Blazers had been seized, defendant reviewed the information that had been given to the trooper and concluded that the information about the two vehicles had become confused. He wrote a letter to the trooper who had seized the vehicle in which he asserted that some information regarding the Blazer that was seized had mistakenly been included with the information about the other Blazer. He also supplied additional information that had not previously been presented to the trooper: the salvage title to the burned vehicle, prerestoration photographs of the collision vehicle, photographs of the burned vehicle, receipts for new doors that had been installed on the vehicle that had been seized, and a photograph of the original doors from the collision vehicle in which the original vehicle identification number was visible.

The trooper testified that he did not consider the information provided by defendant in his letter significant. He did not seek additional information from defendant, but he did begin his own investigation regarding the seized vehicle. Upon again inspecting it, this time more closely, he determined that many of the parts incorporated into it evidenced exposure to fire. He also determined that the front frame was from the burned vehicle while the rest of the frame was from the collision vehicle. The two frame parts had been welded together. Finally, he discovered that the rivets attaching the vehicle identification number plate on the dash were not original Chevrolet rivets, but rather were pop rivets that had been filed and painted black to resemble the rosette rivets used by Chevrolet.

The trooper testified before the trial court that, inasmuch as the front frame had come from the burned vehicle, the vehicle identification number plate on the dash should have been the one from the burned vehicle. He further testified, however, that it was not. Rather, it was the same number that appeared at other places on the seized vehicle, the one from the collision vehicle. This, coupled with his observations regarding the rivets and the apparent tampering with the glove compartment vehicle identification sticker, led him to conclude that the vehicle identification numbers had been tampered with in an effort to obtain a rebuilt salvage title for a vehicle that was actually "self-assembled."

A self-assembled vehicle is one built by someone other than a manufacturer. See R.C. 4505.111. According to the trooper, a self-assembled vehicle is not as valuable as a rebuilt salvage vehicle because it does not carry any of the warranties provided by a manufacturer and is excluded from vehicle recalls.

Defendant was indicted on two counts of tampering with vehicle identification numbers in violation of R.C. 4549.62. Additionally, the state moved for forfeiture

of the vehicle. Subsequently, the state voluntarily dismissed the criminal charges against defendant. It continued, however, to seek forfeiture.

On February 5, 1993, the trial court granted the state's motion for forfeiture. Defendant thereafter moved for reconsideration. By that motion, he argued that Exotic Auto should be permitted to recover parts that had been incorporated into the vehicle. The trial court denied defendant's motion for reconsideration on June 23, 1993. Defendant timely appealed to this court.

## II

The state's forfeiture motion was founded upon R.C. 2933.41 and 4549.62. R.C. 2933.41 provides that property (other than contraband that is subject to R.C. 2933.43 and certain other categories of property) that has been lawfully seized or forfeited may be kept by a law enforcement agency for use as evidence. Such property is eventually to be returned to persons entitled to possess it, provided they have not lost their right to possession pursuant to R.C. 2933.41(C) or some other statutory forfeiture provision.

R.C. 4549.62(A) and (D)(1) provide that it is an offense to tamper with a vehicle identification number with a purpose to conceal or destroy the identity of a vehicle or a vehicle part, or to possess a vehicle with knowledge that someone has tampered with its vehicle identification number. R.C. 4549.62(D)(2)(a) provides that a vehicle with a vehicle identification number that has been tampered with may be seized and forfeited pursuant to R.C. 2933.41. If a derivative of a vehicle identification number on a part has been tampered with and, as a result, the identity of the part cannot be determined, "the entire vehicle is subject to seizure pending a determination of the original identity and ownership of the vehicle and parts of the vehicle." (The first six digits of the vehicle identification number are placed on various parts of the vehicle for the purpose of making theft of vehicles and vehicle parts more difficult. See *State v. Miller* [Oct. 6, 1993], Lorain App. No. 93CA005558, unreported, at 7, 1993 WL 392086.)

In this case, the trooper seized the vehicle at issue because proper documentation had not been presented for a number of replacement parts that had been incorporated into it, because the vehicle identification number sticker was missing from one of the doors, and because a glove compartment sticker bearing the vehicle identification number appeared to have been tampered with. Further examination revealed that several parts evidenced fire exposure, that the front frame was from a vehicle other than the vehicle that the remainder of the frame was from, and that the vehicle identification number plate located on the dash was attached by rivets that not only were not of the type used by the manufacturer, but had been tampered with in an apparent attempt to make them appear to be the type used by the manufacturer.

At the forfeiture hearing, defendant produced receipts demonstrating that the replacement parts that did not come from the burned vehicle had been properly purchased by Authentic Motor. He also produced titles that demonstrated that Authentic Motor was the owner of both the collision vehicle and the burned vehicle. He testified that he did not know why the glove compartment vehicle identification number sticker appeared as though it had been removed and replaced or why the vehicle identification number plate on the dash was not secured with the type of rivets used by the manufacturer.

The trial court stated that the vehicle had been seized and a motion for forfeiture had been filed "pursuant to statute, the forfeiture statute being 2933.41, and the enabling legislation being Ohio Revised Code 4549.62." It found that the vehicle was contraband and should be forfeited:

"This court finds by a preponderance of the evidence that the Vehicle Identification Numbers have been removed or altered in such a manner that the identity of the vehicle or the part cannot be determined by a visual examination of the number at the site where the manufacturer placed the number. Thus, this vehicle becomes contraband by the greater weight of the evidence and pursuant to Ohio Revised Code 2933.42, shall not be possessed by the defendant and/or his company."

A

Defendant's first assignment of error is that the trial court incorrectly classified the vehicle as contraband. Contraband is defined in R.C. 2901.01(M):

" 'Contraband' means any property described in the following categories:

"(1) Property that in and of itself is unlawful for a person to acquire or possess;

"(2) Property that is not in and of itself unlawful for a person to acquire or possess, but that has been determined by a court of this state, in accordance with law, to be contraband because of its use in an unlawful activity or manner, of its nature, or of the circumstances of the person who acquires or possesses it;

" * * *

"(4) Property that is forfeitable pursuant to a section of the Revised Code[.]"

Defendant has argued that the court should have looked only to subsection (1) of R.C. 2901.01(M) for the definition of contraband in this case and that, had it done so, it could not have classified the vehicle as contraband. He has argued that, pursuant to R.C. 4549.62(D)(1), it is unlawful for a person to possess a vehicle with a removed or altered identification number only if that person has knowledge of the removal or alteration. According to defendant, the trial court

incorrectly found that if the vehicle identification number was removed or altered, the vehicle was contraband regardless of defendant's lack of knowledge.

■ It is true that R.C. 4549.62(D)(1) provides that it is an offense to knowingly possess a car with a tampered vehicle identification number. Subsection (D)(2)(a) of that same section, however, provides:

"A vehicle or vehicle part from which the vehicle identification number or a derivative thereof has been so removed, defaced, covered, altered, or destroyed shall be seized and forfeited under section 2933.41 of the Revised Code * * *."

The word "so" as used in this subsection refers to a vehicle identification number that has been tampered with "in such a manner that the identity of the vehicle or part cannot be determined by a visual examination of the number at the site where the manufacturer placed the number." R.C. 4549.62(D)(1). R.C. 4549.62(D)(2)(a) does not require that a person in possession of a vehicle with a tampered vehicle identification number have knowledge of that tampering before the vehicle may be seized and forfeited. While subsection (D)(1) focuses on the illegal act of the person (knowingly possessing a car with a tampered vehicle identification number), subsection (D)(2) focuses on the status of the vehicle itself and permits seizure and forfeiture if the vehicle identification number has been tampered with in a particular way.

■ The trial court did not err in its application of R.C. 2901.01. It could have properly found that the vehicle met either the definition of contraband provided by subsection (M)(2) of that section ("property that is not in and of itself unlawful for a person to acquire or possess, but that has been determined by a court of this state, in accordance with law, to be contraband because * * * of its nature") or the definition of contraband provided by subsection (M)(4) of that section ("property that is forfeitable pursuant to a section of the Revised Code").

■ Even if defendant's knowledge that the vehicle identification number plate and sticker had been tampered with had been a prerequisite to forfeiture, there was sufficient evidence before the trial court that he had such knowledge. Defendant has argued that he did not know that the vehicle identification number had been changed or that the rivets were not of the type used by the manufacturer. He has also argued that it was possible that the original dash vehicle identification number plate had been removed and then simply reattached with different rivets prior to the time Authentic Motor purchased the vehicle.

There was conflicting testimony at the forfeiture hearing regarding whether defendant knew, or had reason to know, that the dash vehicle identification number plate had been tampered with. The state has argued that the part to which the dash vehicle identification number plate was attached came from the burned vehicle rather than the collision vehicle and that, therefore, the number

on the original plate would have been the vehicle identification number of the burned vehicle. Inasmuch as defendant installed that part during his restoration work, he must have removed the plate that was attached to it and replaced it with the one from the collision vehicle. As one trooper testified:

"A. Well, as we stated before, the engine and the transmission came from the burnout vehicle. The body we determined came from the burnout vehicle. The back half of the frame came from the wrecked vehicle which has a confidential serial number on it. And then the VIN tag in the windshield has been replaced, has been taken out of one vehicle and put in another one, the rivets had been changed.

"Q. In other words, what you're saying is because the front of the vehicle came from a burned-out vehicle, that front should match the—the VIN number should be of that burnout vehicle?

"A. Yes, it should."

The trooper explained that the vehicle identification number plate is actually attached to the cowling, the metal piece that "goes in front of the dashboard and is part of the framework that holds the dashboard."

Another trooper testified that the vehicle identification number plate on the seized Blazer matched the number of the collision vehicle, but that the "rivets that are attaching that to the body are pop rivets made to look like General Motors' rosette rivets." He also testified that it was unlikely that someone had simply removed the original vehicle identification number plate and then put it back in place with pop rivets. He explained that the damage to the collision vehicle had been on its right side rather than on the left side, where the vehicle identification number plate was located. Finally, he testified that the vehicle identification number plate was located "fractions of inches" from the firewall and that there was evidence of fire exposure to the firewall, indicating that it was from the burned vehicle.

Defendant testified that the vehicle identification number plate was the same one that was in place when he received the vehicle and that, as stated previously, he did not realize that the rivets securing it were not the original rivets. As for the location of the plate and its proximity to parts taken from the burned vehicle, he claimed that the diagram used by the troopers was inaccurate and that the plate was not attached to the cowling as the troopers claimed:

"[Defendant]: * * * the VIN number isn't on the cowl panel. It's on the—it's on the section that goes around the window. It's a separate piece. It's not part of the cowl.

"Q. But you agree with me that the front end of the vehicle is the parts vehicle?

"A. The cowl section, the lower cowl section is the parts vehicle."

There was sufficient evidence that the vehicle identification number plate was attached to a part that had come from the burned vehicle. Because defendant was the person who installed the parts from the burned vehicle, the trial court could have reasonably concluded that defendant changed the vehicle identification number plate.

In addition, there was some evidence that the front panel on the dash, which included the door to the glove compartment, was not an original part of either the burned vehicle or the collision vehicle. A trooper testified that, when he scratched away some of the silver gray paint on its surface, he saw that the panel had originally been red. Defendant testified that the collision vehicle would have originally had a silver grey panel. He claimed that, although the panel had been replaced, the inside of the glove compartment (which contained the glove compartment vehicle identification number sticker) was from the collision vehicle. Again, there was sufficient evidence for the trial court, after assessing the credibility of each witness, to determine that the original glove compartment vehicle identification number sticker had been removed and replaced with the sticker from the collision vehicle.

The trial court stated that the vehicle identification numbers had been "removed or altered in such a manner that the identity of the vehicle or the part cannot be determined by a visual examination of the number at the site where the manufacturer placed the number." Although it did not specifically find that defendant had tampered with the numbers, there was sufficient evidence from which it could have concluded that, if he did not do so, he at least had knowledge that it had occurred. Defendant's first assignment of error is overruled.

B

Defendant's second assignment of error is that the trial court failed to consider an applicable exception to the seizure and forfeiture provision of R.C. 4549.62(D)(2). R.C. 4549.62(D)(4)(a) provides, in part:

"Divisions (D)(1) and (2) of this section do not apply to the possession of an owner, or the owner's insurer, who provides satisfactory evidence of all of the following:

"(i) That the vehicle identification number or derivative thereof on the vehicle or part has been removed, defaced, covered, altered, or destroyed, after the owner acquired such possession, by another person without the consent of the owner, by accident or other casualty not due to the owner's purpose to conceal or destroy the identity of the vehicle or vehicle part, or by ordinary wear and tear[.]"

Defendant has argued that the vehicle identification number on the seized vehicle was changed by someone other than the owner without the consent of the owner and that, therefore, the exception provided by R.C. 4549.62(D)(4) is applicable. He has further argued, however, that the change occurred "some time prior to [Authentic Motor] purchasing the vehicle." Inasmuch as R.C. 4549.62(D)(4)(a)(i) specifically provides that it is applicable only to changes that occur "after the owner acquired such possession," it does not support his argument. Accordingly, defendant's second assignment of error is overruled.

C

Defendant's third assignment of error is that the trial court incorrectly denied his application to reclaim parts from the vehicle that, he has argued, were not subject to forfeiture. Defendant made his application to the trial court by way of his motion for reconsideration. In that motion, he argued that he was entitled to recover all the parts of the seized vehicle pursuant to R.C. 4549.62(D)(2)(b). Review of R.C. 4549.62(D)(2)(a), however, shows that defendant is excluded from recovering parts from the vehicle.

The first sentence of R.C. 4549.62(D)(2)(a) provides for seizure and forfeiture of (1) a vehicle on which the vehicle identification number has been "removed, defaced, covered, altered, or destroyed" or (2) a vehicle part on which a derivative of a vehicle identification number has been "removed, defaced, covered, altered, or destroyed." The second sentence of R.C. 4549.62(D)(2)(a) provides that if a part with a derivative of the vehicle identification number that has been "removed, defaced, covered, altered, or destroyed in such a manner that the identity of the part cannot be determined" has been installed on a vehicle, the entire vehicle can be seized, "pending a determination of the original identity and ownership of the vehicle and parts of the vehicle, and the rights of innocent owners to reclaim the remainder or any part of the vehicle." R.C. 4549.62(D)(2)(b), by which defendant has argued that he is entitled to reclaim the parts of the vehicle, provides the method for owners of vehicles that have been seized pursuant to the second sentence of Subsection (D)(2)(a) (because they contain parts with a tampered derivative of the vehicle identification number) to reclaim "their respective parts" upon proof of several things. Subsection (D)(2)(b) does not create a right of owners of parts on a vehicle seized pursuant to the first sentence of Subsection (D)(2)(a) (because it has a tampered vehicle identification number) to recover those parts. To hold otherwise would be to, in effect, deem the vehicle identification number plate simply a part of the vehicle to which it is attached, rather than a representation of the identity of that vehicle. The statute does not support such a reading.

The trial court did not err when it denied defendant's motion for reconsideration. Defendant was not entitled to recover parts from the seized vehicle because it was subject to seizure and forfeiture based upon tampering with its vehicle identification number, not based upon tampering with a derivative of that number on some part of the vehicle. Defendant's third assignment of error will be overruled.

## III

Defendant's assignments of error are overruled. The trial court's judgment is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.